IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NATHANIEL COSTLEY, SR., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-10-3122 |
| ERIC SHINSEKI, | * | |
| Defendant | * | |
| | * | |

**MEMORANDUM**

Nathaniel Costley Sr. ("Plaintiff") brought this suit against Secretary of Veterans Affairs Eric Shinseki ("Defendant"), alleging employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e, *et seq*. (West 2011).[1] Defendant now moves to dismiss Plaintiff's discrimination claim, and for summary judgment on his retaliation claim. (Def.'s Mot. Dismiss & Summ. J., ECF No. 25). The issues have been briefed and no oral argument is required. Local Rule 105.6. For reasons explained below, Defendant's Motion To Dismiss And For Summary Judgment (ECF No. 25) is GRANTED.

**I.    BACKGROUND**

    **A.    Synopsis**

The Department of Veterans Affairs Center for Acquisition Innovation ("CAI") operates the Acquisition Academy Internship School ("the Academy"), which trains new employees in the management of government contracts. Plaintiff is a former intern at the Academy, who was terminated after completing the first year of his internship. During his time at the Academy, Plaintiff's interactions with his supervisors and instructors were generally antagonistic. Plaintiff

---

[1] Other defendants named and claims asserted in the complaint were dismissed by this Court's Memorandum and Order of February 7, 2011 (ECF No. 24).

1

received several negative evaluations of his performance, and was disciplined on a number of occasions for alleged misconduct. (Compl. *passim*, ECF No. 1). In turn, Plaintiff allegedly criticized the Academy for what he perceived to be poor instruction, a lack of minority leadership, and unfair treatment of him personally. *Id*. Plaintiff maintains that he was treated less favorably than other interns because of his race (black) and sex (male), and that he was terminated in retaliation for his criticism of the Academy. Defendant maintains that it terminated Plaintiff for poor performance and discipline problems.

### B. Terms of Plaintiff's Employment

In September of 2008, Plaintiff accepted an offer of employment as a contract specialist with Defendant, contingent upon his completion of a two-year Federal Career Internship. (Intern Agreement, ECF No. 25-4, Ex. 3). The internship, conducted at the Academy, was to consist of training in the negotiation, award, and administration of government contracts, with an emphasis on the specific needs of the VA. *Id*. During the internship, Plaintiff was to be considered in "probationary status," and Defendant reserved the right to terminate his employment at any time if he did not complete the internship successfully, or if he were "otherwise found to be unsuitable." *Id*.

### C. Conflicts During Plaintiff's Employment

#### 1. Plaintiff's Supervisors

For the first few months of his employment, Plaintiff's first-line supervisor was the Academy's Chancellor, Lisa Doyle. (Pl.'s Sworn Statement 2, ECF No. 31-2, Ex. 2). During this initial period, Plaintiff and Doyle enjoyed a good working relationship. *Id* at 3. But, in November of 2008, the Academy hired a new Vice Chancellor, Melissa Starinsky, who took over responsibility for supervising the interns. *Id* at 4. Shortly after this point, Plaintiff's relationships with both Doyle and Starinsky appear to have deteriorated. *Id* at 4-5; (Compl.

*passim*). Plaintiff alleges that, from that point on, Doyle and Starinsky treated him in a condescending manner, leveled false accusations against him, and disciplined him unfairly. *Id*.

### 2. "Incident" With Frank Gonzales

The first conflict between the parties occurred in November of 2008, shortly after Plaintiff's internship began. Defendant's memoranda refer, without elaboration, to "an incident with a fellow intern" that prompted Starinsky to inform Plaintiff that the Academy "would not tolerate hostility or violence in the workplace..." (Def.'s Mem. 3). According to Plaintiff, the "incident" Defendant refers to occurred when he and another intern, Frank Gonzales, got into an argument while working together on a team project. (Pl.'s Statement 2). Plaintiff claims that he approached Starinsky and another supervisor, Effrain Fernandez, and requested they "mediate the situation," but that they decided instead to lecture the entire intern class on the Academy's policies. *Id*.

### 3. Plaintiff's Leave Request

The next conflict occurred in February of 2009, when Plaintiff submitted a leave request to Starinsky for the week of May 4-8, 2009. (Def.'s Mem. 4). In an e-mail, Starinsky wrote, "Tentative approval provided it does not conflict with work on your next job rotations. We'll re-assess as we get closer." (Starinsky/Costley E-mail, Compl., Ex. 4, filed separately). Defendant maintains that Plaintiff acknowledged that "re-assessment would be necessary" but that he took the requested leave anyway without getting final approval. (Def.'s Mem. 4). Plaintiff, however, alleges that he had "several discussions" with Starinsky regarding his leave, which he claims were "all documented," citing Exhibit 4 of his complaint. (Pl.'s Resp. 5). That exhibit, however, shows only Plaintiff's response to Starinsky's e-mail, quoted above. In that response, Plaintiff wrote that he and his family were already planning their vacation and that "waiting until the time gets closer is not in our best interest." (Starinsky/Costley E-mail). Instead, Plaintiff requested

3

"early approval" and wrote that "Then as the time gets closer to my job rotation we can asses [sic] the work load with an understanding that I will be responsible for the work despite of my absence." *Id.*

When Plaintiff did not report for work on May 8, Defendant contacted Plaintiff's mentor at the Academy, Maurice Stewart, and notified him that Plaintiff was absent without approved leave. (Stewart Dep. 6:15-7:13, ECF No. 25-8, Ex. 7). Stewart then called Plaintiff and discovered that he was on vacation with his family in Las Vegas. (Def.'s Mem. 4). Stewart testified at his deposition that the reason for his call was to discuss Plaintiff's taking leave without authorization (Stewart Dep. 6:21-7:5), but Plaintiff insists that "At no time during this conversation did it appear that Plaintiff was in violation of any rules or sanctions." (Pl.'s Resp. 5).

### 4. Plaintiff's Conversation with Maurice Stewart

Plaintiff claims that on March 27, 2009, he spoke on the phone with Maurice Stewart and "told [him] how both Doyle and Starinsky, were not promoting minority leadership to upper management positions," and "expressed concerns regarding the hiring practices and the unequal treatment towards minorities who failed to agree with the decisions of upper management" as well as the "training and development the interns were receiving." (Pl.'s Resp. 5). Plaintiff further alleges that Stewart later conveyed his statements to Doyle, but Doyle denies this in her deposition testimony. (Doyle Dep. 64:10-13, ECF No. 31-3, Ex. 3).

### 5. Plaintiff's Letter of Counseling

When Plaintiff returned from vacation on May 11, 2009, Starinsky presented him with a Letter of Counseling, outlining various alleged conduct and performance problems, and warning of possible removal or other disciplinary actions if the problems persisted. (Letter of Counseling, ECF No. 25-7, Ex. 6).

The letter detailed four instances of misconduct, the first and fourth of which were the "incident" with Frank Gonzales and Plaintiff's unauthorized leave, respectively. *Id*. The other two instances referred to information Starinsky had "recently learned" regarding "intimidating and provoking behavior and threatening body language" that Plaintiff allegedly exhibited toward other interns, and "derrogatory [sic] comments about the VA Acquisition Academy program and its leadership" he allegedly made to visiting VA employees at an "after hours 'mixer.'" *Id*. The letter stated that Plaintiff was "expected to positively represent this program both within and outside of work." *Id*.

In addition to the allegations of misconduct, the letter also set out Starinsky's observations that Plaintiff's written work contained many grammatical and substantive errors, that he often made "incoherent" or "irrelevant" comments, that he appeared not to be paying attention, and that he had failed to follow instructions on a recent assignment. *Id*.

Plaintiff writes that he was "baffled by the falsities" in the letter, which appeared to him to be in retaliation for the comments he allegedly made at the "mixer." (Pl.'s Resp. 6). Plaintiff further claims that Starinsky said, "If you stay out of trouble and keep your mouth closed about the program, the letter will be thrown out in six months." *Id*.

### 6. Plaintiff's Conversation with Harold McAlduff

Plaintiff alleges that, prior to going on vacation, he informed one of his instructors, Harold McAlduff, as well as several other interns with whom he was working on a team project, that he would be on leave from May 4th-8th. *Id* at 5. But, during his conversation with Starinsky regarding his Letter of Counseling, Plaintiff apparently learned that McAlduff had told Starinsky that Plaintiff never informed him of his vacation plans. *See id* at 6. Plaintiff alleges that after he finished speaking with Starinsky, he confronted McAlduff regarding this statement, as well as

5

the "manor [sic] McAlduff, Jacobs, and other instructors treated him as opposed to other interns." *Id*. He describes McAlduff's response as "extremely curt and vague." *Id*.

However, after the conversation with Plaintiff, McAlduff drafted a memorandum detailing what they discussed. (McAlduff Memorandum, ECF No. 25-9, Ex. 8). According to the memorandum, McAlduff responded to Plaintiff that, based on their previous discussion, he had expected Plaintiff to be gone only a short time, not an entire week, and was under the impression that the absence was in order to complete work for a team assignment, rather than for vacation. *Id*. McAlduff also emphasized that his acknowledgment of Plaintiff's intent to be absent from class did not constitute approval of a leave request. *Id*.

The memorandum also states that Plaintiff expressed concern regarding his standing in the program and that McAlduff offered an evaluation of Plaintiff's performance. *Id*. McAlduff's assessment was that Plaintiff was in the bottom third of the class because he "continue[d] to lack an understanding of many basic contracting terms and principles," and because he "often only listen[ed] to half of the problem or exercise," which led to "incomplete or wrong results requiring one-on-one consultation and re-work." *Id*.

### 7. Plaintiff's Conversation with Lisa Doyle

The day after he received his Letter of Counseling, Plaintiff met with Lisa Doyle to discuss the letter and its accusations. (Pl.'s Resp. 7). Plaintiff alleges that at the meeting, Doyle told him she had learned from several interns, as well as Maurice Stewart, that Plaintiff was complaining about the "leadership of the academy," that he had said that "the Academy lacks minorities in upper management," that he therefore "wonder[ed] about his advancement to a leadership position within [the] program," and that he was "bored and not challenged by the curriculum." *Id*. He further alleges that Doyle said she "did not appreciate having an SES [i.e., Stewart] contacting her regarding a program that she had worked so hard on to 'stand up,' and

that by going to Steward, [sic] Plaintiff had really broken her heart." *Id*. However, in her deposition testimony, Doyle denied that she made any such statement or that Stewart ever told her about Plaintiff's criticism of the Academy. (Doyle Dep. 64:10-65:11, ECF No. 31-3, Ex. 3).

Plaintiff also claims that he told Doyle he believed he was being treated unfairly because of his criminal background, but that Doyle replied that "Melissa Starinsky had a right to know about [Plaintiff's] criminal background as his direct supervisor and the others were informed for their safety." (Pl.'s Resp. 7).

### 8. Plaintiff's Midterm Performance Review

On June 1, 2009, Plaintiff had a mid-term performance review with Starinsky, during which she filled out an evaluation form regarding his progress. At the end of the form, Starinsky checked a box indicating that Plaintiff's performance was "considered Fully Successful or better," though she also made a hand-written note that read "See Counseling Letter of 5/11/09." (Performance Review, Compl., Ex 10, filed separately). Additionally, Plaintiff was required to submit two written self-assessments of his progress in the program. (Compl. 6-7). In one of these, Plaintiff wrote that he was "challenged by the lack of support from our instructors." *Id* at 7. He claims that Starinsky said she "did not approve of his choice of words." *Id*.

### 9. Plaintiff's "Intern Assessment" from Daniel Jacobs

A few hours after Starinsky completed Plaintiff's performance review, she received his Student Assessment Rubric, prepared by one of his instructors from the Federal Marketing Group, Daniel Jacobs. *See* (Jacobs Assessment, ECF No. 25-11, Ex 10); (Jacobs/Starinsky e-mail, ECF No. 25-22, Ex. 21). Jacobs assessed Plaintiff's performance as "acceptable" in the area of "analysis," but "unacceptable" in the remaining two areas of "thinking" and "contribution." The report began by stating that, "given his current demonstrated knowledge and skills, we have concerns about his ability to function as a contracting officer." Jacobs further

7

remarked that Plaintiff had poor classroom attendance, "preconceived answers to all questions," an "[in]ability to diverge from established views," and that he did not "support conclusions with evidence." In conclusion, the Assessment stated that, "We are not sure this training and career path is a priority for him."

### 10. David Franklin's Allegations

On the day following Plaintiff's mid-term performance review, Starinsky conducted the review of another intern, David Franklin. (Def.'s Mem. 5). Starinsky claims that Franklin told her that Plaintiff had made "a 'punching' or 'boxing' type gesture toward [him]" in the hallway, and that he "felt uncomfortable and kn[ew] that he should have come forward at the time but was afraid to." (Starinsky Memo, ECF No. 25-12, Ex. 11). However, Plaintiff has produced two sworn and notarized witness statements from Franklin that he argues contradict Starinsky's claim. In one of the statements,[2] Franklin avers that he only told Starinsky that Plaintiff sometimes "frustrat[ed] him," that he mentioned Plaintiff's "playful 'boxing' gestures," and that he never said that Plaintiff threatened or intimidated him. (2nd Franklin Statement, ECF No. 27, Ex. 3, filed separately).

### D. Plaintiff's Termination & Prior Proceedings

On June 12, 2009, a little over a week after Plaintiff's performance review and assessment, Starinsky and Doyle notified Plaintiff that he was being terminated, and presented him with a letter explaining their reasons. (Pl.'s Resp. 10). The letter specified that Plaintiff was being terminated for "failure to maintain minimal performance standards," citing the May 11, 2009 Letter of Counseling, as well as the negative performance evaluations from McAlduff and Jacobs. (Termination Letter, ECF No. 25-13, Ex. 12). The letter also emphasized Plaintiff's

---

[2] Both statements are dated the same day, August 6, 2010, but were witnessed by different notaries. The first statement, filed with Plaintiff's complaint, does not mention anything about Franklin's conversation with Starinsky. The passage quoted here appears in the second statement, filed with Plaintiff's Response in Opposition to Motion To Dismiss and for Summary Judgment (ECF No. 27).

signature of the Federal Career Intern Agreement, in which he acknowledged that he could be terminated if he failed to complete the internship or were "otherwise found to be unsuitable." *Id*. Plaintiff alleges that he requested an opportunity to respond to the allegations cited in the letter, but that Doyle and Starinsky firmly refused. (Pl.'s Resp. 10).

After his termination, Plaintiff contacted an EEO officer at the Academy and filed a formal complaint of employment discrimination, which the VA Office of Resolution Management ("ORM") investigated. (Def.'s Mem. 6). Shortly after the investigation began, Plaintiff filed additional charges with the EEOC. As part of the EEOC proceedings, Plaintiff deposed ten witnesses, including Starinsky, Doyle, and Stewart. Without a hearing, an EEOC administrative law judge granted summary judgment to Defendant. *Id* at 7.

On November 3, 2010, Plaintiff filed the instant complaint with this Court against Secretary Eric Shinseki of the Department of Veterans Affairs, Lisa Doyle, Melissa Starinsky, Harold McAlduff, and Daniel Jacobs, alleging several different legal theories. This Court dismissed all of the original claims and defendants except for Plaintiff's claims under Title VII against Secretary Shinseki for employment discrimination and retaliation. Defendant now seeks dismissal and/or summary judgment regarding those claims.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) prescribes a "liberal pleading standard," requiring only that the plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief," a "short and plain statement of the grounds of the court's jurisdiction," and a "demand for the relief sought." Fed. R. Civ. P. 8(a) (West 2011); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007). When a defendant moves

9

for dismissal under Rule 12(b)(6), the court must evaluate the complaint's sufficiency, viewing all well-pled factual allegations as true, and construing them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive the motion, the complaint must present enough factual content to render the plaintiff's claim "plausible on its face" by enabling the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A plaintiff filing *pro se* is entitled to a "less stringent standard" than is a lawyer, and the court must construe his claims liberally, no matter how "inartfully" pled. *Erickson*, 551 U.S. at 94; *see also Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 724 (observing that liberal construction of a complaint is particularly appropriate where a *pro se* plaintiff alleges civil rights violations). However, even a *pro se* complaint must meet a minimum threshold of plausibility. *See, e.g., O'Neil v. Ponzi*, 394 Fed. App'x. 795, 796 (2nd Cir. 2010).

    **B.**    **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a factual dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). But, if the moving party carries this burden, the opposing party must then set out specific facts, beyond the mere allegations or denials in the pleadings, showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). The court must view all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

In this jurisdiction, a district court may not enter summary judgment against a *pro se* plaintiff without first providing him with "fair notice of the requirements of the summary judgment rule," in a form that is "sufficiently understandable" to one in his circumstances.

*Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). As an initial matter, the Court observes that on March 8, 2011, it furnished Plaintiff with notice that Defendant had filed a motion for summary judgment, that judgment could be entered against him if the motion were granted, and that he had a right to file a response, supported by affidavits and other evidence. (Rule 12/56 Letter, ECF No. 26). Thus, having received proper *Roseboro* notice, Plaintiff must be held to the normal standards of summary judgment, notwithstanding his *pro se* status. *See Larken v. Perkins*, 22 Fed. App'x. 114, 115 n.* (4th Cir. 2001).

## III. ANALYSIS

### A. Employment Discrimination

A *prima facie* case of employment discrimination consists either of direct evidence of discriminatory intent, or circumstantial evidence consisting of: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004). If a plaintiff succeeds in making out a *prima facie* case, then the burden of production shifts to the employer to show a legitimate reason for the alleged discriminatory action. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the employer carries this burden, the plaintiff must then demonstrate that the employer's proffered reasons were merely a pretext for discrimination. *Id*.

Plaintiff's complaint identifies no similarly situated employees at the Academy who were treated more favorably than Plaintiff. Rather, Plaintiff attempts to avoid dismissal by making several new allegations of disparate treatment in his Response. Only one of these allegations plausibly relates to a similarly situated employee. That employee, Stanley Lerner, was a white male intern who was granted "final eligibility" for a position with a Moderate Risk Level, despite having received a Letter of Warning for lying about his criminal record on his job application,

11

and a Letter of Counseling for "angry, aggressive, and annoying behaviors," and for poor performance. *Id* at 27. In contrast, Plaintiff alleges that he never received "final eligibility" for any position. *Id*.

Because the complaint contains no factual allegations whatever regarding the treatment of similarly situated employees at the Academy, no matter how liberally construed, Plaintiff's employment discrimination claim must be dismissed. Importantly, even if the complaint had included the new allegations in Plaintiff's Response, the result would be the same. Lerner's "Letter of Warning," which Plaintiff submits as an exhibit, indicates that "final eligibility" is determined by the VA's Security and Investigations Center ("SIC") pursuant to a background investigation. (Lerner Letter of Warning, Pl. Resp., Ex. 10, filed separately). Even assuming that denial of "final eligibility" is an adverse employment action, Plaintiff has not shown that he was subject to this action, because there is no indication that SIC had yet, or ever, performed a background investigation of him, or made a decision one way or another regarding his eligibility. Furthermore, Lerner was also terminated for failure to maintain minimal performance standards. (Compl. 8). Lerner's letter of termination, like Plaintiff's, also cited both performance and conduct problems, and even included critical language from Jacobs' assessment of Lerner identical to that quoted in Plaintiff's letter. (Lerner Letter of Termination, ECF No. 1, Ex. 15, filed separately). These facts simply do not permit a conclusion that Lerner was treated more favorably than Plaintiff.

Because Plaintiff has alleged no facts that would allow this Court to draw a reasonable inference of discrimination, Defendant's motion to dismiss Plaintiff's claim of employment discrimination will be granted.

B.   Retaliation

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). When a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to offer a non-retaliatory reason for the plaintiff's termination. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). If the defendant succeeds in meeting this burden, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext.

Plaintiff claims that he engaged in a protected activity in March of 2009, when he told Maurice Stewart in a private telephone conversation that he thought Doyle and Starinsky were not promoting minority employees to management positions, that he had "concerns" about "the hiring practices and the unequal treatment of minorities who failed to agree with the decisions of upper management," and about the quality of instruction at the Academy. Plaintiff alleges further that Stewart conveyed his remarks to Doyle, and that Defendant made the decision to fire him shortly thereafter. Finally, Plaintiff asserts that the relatively short amount of time that elapsed between his conversation with Stewart and his termination shows a causal connection between the two.

The Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation. His Response in Opposition to Summary Judgment merely restates, verbatim, the allegations in his complaint, which are not sufficient to raise a triable issue of fact. *Compare* (Pl.'s Resp. 16) *with* (Compl. 3). Plaintiff had an opportunity to elicit testimony regarding his alleged protected activity when he deposed Maurice Stewart, but he did not do so. In fact, when Plaintiff asked Stewart about their telephone conversation of March of 2009, Stewart could only recall

discussing Plaintiff's "unauthorized leave" and his "not being busy enough at the Academy." (Stewart Dep. 5:18-6:14, Pl.'s Resp., attachment filed separately). Nowhere does Stewart mention any of Plaintiff's alleged "concerns" about the Academy's employment practices. Also absent from Stewart's deposition testimony is any mention of ever conveying Plaintiff's remarks to Doyle. *Id.* Doyle, herself, flatly denied that Stewart told her about Plaintiff's criticism, and could not recall ever saying to Plaintiff that his complaining to Stewart "really hurt [her] heart." (Doyle Dep. 64:10-65:7, ECF No. 31-3, Ex. 3). On this record, plaintiff can neither establish that he engaged in protected activity, nor that any such activity was the cause of his termination. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (explaining that "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary" to establish a causal connection).

Moreover, even if Plaintiff had established a *prima facie* case, Defendant would still be entitled to summary judgment because Plaintiff has failed to rebut its non-retaliatory account of the reasons for his termination. Defendant has offered Plaintiff's Letter of Termination as evidence of the non-retaliatory basis for its decision, which cites both Plaintiff's negative performance evaluations and his alleged behavioral problems. (Termination Letter, ECF No. 25-13, Ex. 12). The letter focuses primarily on the evaluations submitted by Jacobs and McAlduff, which describe numerous specific deficiencies in Plaintiff's performance and classroom behavior, and also mentions the issues raised in Starinsky's Letter of Counseling.

Plaintiff attempts to show that the reasons cited in the letter were pretextual by citing the following characterizations of testimony from the depositions of Doyle, Starinsky, and Stewart: (1) Doyle's testimony that Plaintiff's performance had been "satisfactory" during the first 90 days; (2) Stewart's testimony that Plaintiff "seemed attentive and comprehensive" during a

"strategic source meeting" on April 21, 2009;[3] (3) Starinsky's testimony that "no issues of performance were raised during Plaintiff's first job rotation," that Plaintiff passed all his exams, that he "did communicate with her via e-mail," and that his termination was "completely subjective and based on what the instructors thought of him." (Pl.'s Resp. 31-32).

Even if these were accurate characterizations of the witnesses' testimony, which several are not, they do nothing to rebut Defendant's proffered reasons for Plaintiff's termination. First, the facts that Plaintiff might have performed satisfactorily for his first three months, and that he "seemed attentive and comprehensive" on a single day, during a single meeting, in no way undermine the subsequent evaluations by his instructors. Second, Starinsky did not testify that "no performance issues were raised" during Plaintiff's first job rotation, but rather that she could not "recall any specific feedback" from Plaintiff's supervisor on that rotation. (Starinsky Dep., 37:19-38:20). Further, Starinsky's statement that it was "fair" to say that Plaintiff was terminated for subjective measures is in precise accord with the termination letter; as she explains, the Academy relies in part on instructors' subjective assessments of the interns' performance because the "objective" test scores are not always reliable indicators of competence. The fact that Plaintiff passed all of his tests therefore also does not rebut Defendant's proffered explanation.

Elsewhere in his pleadings, Plaintiff also attempts to show that Defendant's citation of his alleged behavior problems is pretextual by citing allegedly exculpatory statements and testimony from David Franklin and Paschal Dawson, whom Starinsky maintains complained to her about Plaintiff's conduct. Franklin now states that he told Starinsky only that Plaintiff "frustrat[ed] him," not that he threatened or intimidated him. (2nd Franklin Statement, ECF No. 27, Ex. 3, filed separately); and, when Plaintiff asked Dawson during his deposition, "Are you intimidated

---

[3] Plaintiff's brief gives the year as 2010, but the Court assumes this is a typographical error.

by Complainant?" Dawson responded that he was not, and that he would not fear for his safety if Plaintiff were reinstated. (Dawson Dep., ECF No. 27, exhibit filed separately).

These statements, too, fail to show pretext. At the very most, they suggest that Starinsky exaggerated the interns' complaints about Plaintiff's conduct; they do not in any way show that the complaints were "fabricated" as Plaintiff claims, nor do they suggest any reason to suspect that the complaints were not one of Defendant's actual reasons for terminating him. Plaintiff has therefore failed to carry his burden of showing that Defendant's proffered reasons for his termination were a pretext for retaliation.

Therefore, as there is thus no disputed issue of material fact with regard to the reasons for Plaintiff's termination, Defendant's motion for summary judgment on Plaintiff's retaliation claim will be granted.

## IV. CONCLUSION

Accordingly, an order shall enter GRANTING Defendant's Motion To Dismiss And For Summary Judgment (ECF No. 25).

Dated this 5th day of May, 2011

BY THE COURT:

/s/
James K. Bredar
United States District Judge